## Wilds, Adm'r, etc. v. Readnour, et al.

(Decided October 28, 1921.)

### Appeal from Grant Circuit Court.

Executors and Administrators—Contract for Services.—In a suit on an alleged contract, where it is claimed that defendant had agreed to will or deed an amount equal to one-half of the value of two farms in consideration of services rendered by plaintiffs, the court should have dismissed the petition, where the proof failed to show not only that the alleged contract was not in fact made but where the proof wholly fails to show performance of the contract relied on.

J. M. LASSING, B. F. and H. C. MENEFEE for appellant.

JOHN L. VEST for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Emaline Wilds and her husband, John B. Wilds, resided on an 87 acre farm in Grant county, title to which was vested in the wife. In this suit instituted by appellees it was alleged that in January, 1900, Emaline Wilds and her husband entered into a contract with appellees by the terms of which it was agreed that John B. Wilds would purchase another farm in Grant county containing 119 acres, known as the Jerry Poor farm, at an approximate valuation of $6,000.00, and to which he and his wife would remove and take up their residence. Appellees were to move from their home in Boone county to the 87 acre farm. Appellee, John Readnour, was to cultivate and raise crops on the smaller farm and assist in the rendition of a like service on the larger farm and Julia Readnour was to assist Emaline Wilds in her domestic work until the Poor farm was paid for. The proceeds from the crops raised on the two farms, after deducting the living expenses for both families, were to be applied to the unpaid part of the purchase price on the

Poor farm until it was fully settled. In consideration of these services it was alleged that Emaline Wilds and her husband agreed they would each make a will, or by deed or otherwise make such provision that after the death of the survivor, Julia Readnour would receive a share in the combined estate of the two, equal in value to one-half of the value of the two farms.

It was further alleged that in 1900 appellees moved to the 87 acre farm and resided thereon until 1906; that they performed their part of the contract and after deducting the living expenses for both families during this time sufficient money was derived from the sale of crops to pay the balance due on the purchase price of the Poor farm.

The 87 acre farm was sold by Wilds and wife in March 1906, and the Poor farm was sold in 1912. It was claimed that appellant, Robert Hiner Pierce, (who had been adopted by Wilds and wife as their heir at law) because of his dissipated habits contracted many debts which he persuaded his adopted parents to pay, with the result that at the time the petition was filed there remained only the sum of about $3,500.00 of the combined estates of Emaline Wilds and her husband. At the time of the death of Emaline Wilds, in 1917, it is alleged this amount stood in her name.

In September, 1914, Emaline Wilds and her husband contracted with one Adams for the purchase of a 60 acre farm in Kenton county, on which $100.00 was paid in cash. During the pendency of a suit growing out of defects in the title to this farm, and which involved the settlement of certain questions of interest, the sum of $3,308.59, representing the remainder of their estate, was placed in escrow, but Emaline Wilds died before this controversy was disposed of.

It is said John B. Wilds has no property other than such interest as he might have in said $3,500.00. The two farms having been sold and John B. Wilds having denied making the contract sued on, at the same time declaring his purpose not to carry it out, appellees filed this suit fixing their damages at $4,500.00, for which sum they sought judgment. Following a settlement of the litigation involving the Kenton county farm they asked that said farm be finally subjected to the payment of any judgment appellees might recover in this action upon the expiration of the life estate of John B. Wilds. The fore-

going is a substantial statement of the allegations of the petition.

The lower court entered judgment in favor of appellees against appellant Wilds individually and as administrator of his wife's estate in the sum of $4,500.00, subject to the life estate of said Wilds. It is to reverse said judgment that the present appeal has been prosecuted.

Other than the statement of two witnesses that Mrs. Wilds had said she wanted her niece, Julia Readnour, to have one-half of her property there was no attempt to prove any contract with Emaline Wilds.

According to the testimony introduced by appellees they remained on the 87 acre farm for six years, and performed all the services called for by their contract. The testimony by which they sought to show that the net proceeds of the crops raised were sufficient to pay the balance due on the Poor farm is far from convincing. When appellees moved to the 87 acre farm they took with them their three children, the oldest of whom was four years of age; they took but little else. During their occupancy of the farm they had a comfortable living and when they left in 1906 they had accumulated some little property.

Julia Readnour had been reared by Wilds and his wife since she was three years of age, but having been married against their wishes she left their home and moved to Boone county. However, J. B. Wilds rendered her financial assistance in the purchase of a modest home and helped them in many ways, frequently furnishing provisions and clothing for the family.

Appellant Wilds positively denies making any contract with appellees, such as was alleged in the petition. He says the real purpose in having appellees move to the 87 acre farm was to have them closer since he and his wife found it necessary to help in their maintenance and support. That aside from the benefit, help and sustenance Readnour and his family derived from the farm, he, Wilds, says he frequently paid Readnour for his services and work done on the place. Wilds and others testify that the Readnours remained on the 87 acre farm for only four years, to-wit: from 1902 to 1906, and that while John Readnour rendered efficient service for the first two years, he, Readnour, received the entire benefit of the crops raised by him the last two years of his occupancy.

The proceeds from the sale of the 87 acre farm were applied in part payment on the 119 acre tract. The rec-

ord shows that the debt on this latter farm was not lifted until 1912, notwithstanding the contention of appellees that by reason of their services there was sufficient income from the two farms by 1906 to pay the balance due on the purchase of the Poor farm.

Appellees admit they received the proceeds from the sale of tobacco raised on the 87 acre tract while they were there, but the parties give rather divergent views as to the quantity of tobacco so raised.

Appellee, Julia Readnour, doubtless made an honest effort to assist her aunt with her housework, but it is hardly possible with their houses about four miles apart that, considering her family of small children, she could, as she testifies, have performed all the duties of the Wilds' household.

The indigence of the Readnour household, the relationship of the parties and the fact that the appeals of the adopted son Robert had probably greatly depleted the family exchequer might make one hopeful of finding a more benevolent attitude toward Julia Readnour than is evidenced by the record, but courts are not keepers of litigants' consciences, nor dispensers of their charities.

We do not know what reason prompted John B. Wilds to declare his intention of depriving Julia Readnour of all share in his estate, if such in fact be the case. However, we are satisfied that not only have appellees failed to prove any semblance of the contract sued on with either John B. Wilds or his wife, but they have wholly failed to convince us of performance on their part of the alleged agreement with either Emaline Wilds or her husband. The judgment is accordingly reversed with instructions to enter an order dismissing the petition.